THE ATTORNEY-GENERAL *v.* THE CONTINENTAL LIFE INSURANCE COMPANY, RAPHAEL J. MOSES et al., Appellants.

In an action brought to dissolve an insolvent life insurance company, and to distribute its assets, certain policy-holders were allowed to intervene. Upon motion of their attorneys, the Special Term ordered a reference to take proof and recommend whether any allowances should be made to said attorneys, or if so, to what amount. Subsequently, a motion to resettle and modify the terms of said order, so as to show a granting or denial of the applications for allowance, was denied. Both orders were reversed by the General Term. *Held*, that its decision was not reviewable here, as the orders were entirely discretionary

(Argued June 27, 1882; decided October 10, 1882.)

APPEALS from orders of the General Term of the Supreme Court, in the third judicial department, made May 12, 1882, which reversed certain Special Term orders, the nature of which, as well as the material facts, are stated in the opinion. (Reported below, 27 Hun, 195.)

*William Barnes* for appellant.

*Leslie W. Russell,* attorney-general in person ; *George W. Wingate* for receiver, respondent. The decision of the General Term cannot be reviewed in this court. It is immaterial whether the appellant's attorneys claimed to be entitled to costs or to an allowance in the nature of costs, it is still a claim to compensation resting in the discretion of the court. (*Matter of Jettor,* 78 N. Y. 603 ; *Att'y-Gen'l* v. *Security Life Ins. Co.,* 23 Hun, 596.)

*Julien T. Davies* for Lewis *et al.,* respondents.

Finch, J. In this action, brought to dissolve the defendant company as an insolvent corporation, and to make just distribution of its assets among creditors and policy-holders, certain of the latter were allowed to intervene, who were represented by nine different attorneys through the succeeding litigation. These were busy themselves and kept the courts busy; their position changing during the exigencies of the struggle ; sometimes fighting each other ; now assailing the receiver, and then defending him ; until the controversy became gravely involved, and the fund seriously imperiled by the alleged effort to defend and increase it. As the final distribution approached, the counsel employed, naturally and rightfully, began to look forward to their compensation ; but instead of presenting bills to the clients who had employed them, they sought to impose their charges upon the common fund, claiming that their services had benefited it, and thereby they had acquired an equitable right to be paid out of it. In the pursuit of this relief a motion was made by one of them, upon an affidavit that he had represented about eight hundred policy-holders through all the emergencies of the litigation, and, upon an exhibit taken from his registers, showing the character of his services from June, 1877, to December, 1881, and which were continuous and almost daily during such period, asked for an allowance of $10,000 out of the fund. Neither the affidavit nor the exhibit show what the result of these services was, as it respected either the increase or depletion of the fund, and no special ground

was stated why the debt of the employing clients should be shifted to the assets of the company which survived the wreck. At about the same time another of the counsel for intervening policy-holders gave his notice of motion for an order requiring the receiver to pay him and all the other intervening attorneys a just compensation, and for a reference to ascertain what should be the amount. This motion was founded upon a brief affidavit that the affiant had appeared for about five hundred policy-holders, and had been " connected with the litigation " since 1876. This petitioner did not show what his services were, or why, instead of a moderate assessment upon each of his five hundred clients, he should be enabled to assess the general fund.

These motions came on to be heard at Special Term. The court ordered a reference to take proof, and recommend whether any allowances should be made, and if so to what amount, the report to be made to the court with all convenient speed, and the referee to sit in the city of New York. This order was certainly not final, but wholly preliminary and provisional. It was purely a matter of discretion. The court could have taken the proofs itself, or refused to take them at all, and might have disposed of the motion solely upon the papers on which it was founded. The order of reference decided nothing and was wholly within the discretion of the court to grant or refuse. After the order of reference was made, some of the parties moved to resettle it and modify its terms so as to show a granting or denial of the applications of the moving parties, and thus dispose of the motion so as to bring up a question of law. This motion was denied. Of course the court knew what it had decided and must be permitted to dictate the form of its own order. From each of these orders an appeal was taken to the General Term. After argument there the order of reference was reversed, and the motion for it denied, and the order refusing a resettlement was also reversed. From each of these orders of reversal an appeal is brought to this court.

We must dismiss both appeals. Neither involves any ques-

tion of law, and both were wholly discretionary. It is said here that the General Term denied the power of that court to make the allowances. The orders do not show it. We cannot go to the opinion to ascertain. We must assume that the reversal was on the merits. (*Noyes* v. *Children's Aid Society,* 70 N. Y. 481.) The whole question of whether or not there should be a reference was purely matter of discretion and really decided nothing upon the main question involved. Upon that question the Special Term even has not acted. It has not said whether allowances should be granted or not, nor whether it had power so to do. It simply took a preliminary step to get at the facts, and the General Term reversed that action, as, in the exercise of their discretion, they had the right to do. If they discussed the question of power, and gave some serious reasons for denying its existence, that does not leave us at liberty to go beyond their order.

The appeals should be dismissed.

All concur.

Appeals dismissed.